Clarence E. **PORTEE**, # 168331 and Charles McCray, # 67683, Plaintiffs,

v.

Charles E. **TOLLISON**, M.D., Chief Medical M.D., and Parker Evatt, Commissioner, South Carolina Department of Corrections, Defendants.

No. 3:90–828–15B.

United States District Court, D. South Carolina, Columbia Division.

Dec. 14, 1990.

Clarence E. Portee and Charles McCray, pro se.

David L. Morrison, Nauful & Ellis, Columbia, S.C., for defendants.

## ORDER

HAMILTON, District Judge.

Plaintiffs Clarence E. Portee and Charles McCray, who are state prisoners housed in the Central Correctional Institution in Columbia, South Carolina, filed this action pursuant to 42 U.S.C. § 1983 claiming that their civil rights were being denied by prison policy that does not adequately protect them from the risk of the Acquired Immune Deficiency Syndrome (AIDS) virus.[1] The complaint, filed April 16, 1990, seeks

1. The virus that causes AIDS is called the Human Immunodeficiency Virus (HIV).

damages from the defendants as well as injunctive relief. Defendants have filed a motion for summary judgment, arguing that the current prison policies regarding the prison population and AIDS are reasonable, and that plaintiffs have failed to show a deliberate indifference to serious medical needs.[2]

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.-02(b)(2)(C), D.S.C., the matter was referred to Magistrate Judge Henry M. Herlong, Jr. for a report and recommendation. That report and recommendation, filed November 13, 1990, is before the court at this time. In his report and recommendation, Magistrate Judge Herlong concluded that plaintiffs have not presented a viable claim for injunctive or monetary relief, and that summary judgment should be granted.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court must make a *de novo* determination of those portions of the magistrate's report and recommendation to which the parties have objected. *Camby v. Davis*, 718 F.2d 198 (4th Cir.1983). Although plaintiffs have not filed objections to the magistrate's conclusion that their claims are without merit, defendants filed "Additional Sustaining Grounds" on November 27, 1990. Because defendants expressed concerns about the magistrate's legal basis, albeit agreeing with his ultimate conclusion, the court has thoroughly reviewed the relevant law and its application to the facts of this case. Based upon this review, the court concludes that defendants' motion for summary judgment should be granted. Rule 56, Fed.R.Civ.Proc.

Plaintiffs' complaint states that the defendants are responsible for prison policy that allows the integration of prisoners with AIDS with the general prison population. Plaintiffs complain that they must eat with the same utensils and from the same plates as AIDS-infected prisoners, and that a homosexual works in the kitchen serving food. They request a change in prison policy, asking that each prisoner be tested for the HIV virus, and that those prisoners testing positive be segregated from the general population.

■ This claim is to be evaluated under the Eighth Amendment's prohibition against cruel and unusual punishment. In *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Supreme Court held that prison conditions are unconstitutional if they are an "unnecessary and wanton" infliction of pain, and they are "totally without penological justification." 101 S.Ct. at 2399. There must be evidence of "a serious medical and emotional deterioration attributable to" a challenged condition in order to violate the Eighth Amendment. *Shrader v. White*, 761 F.2d 975, 979 (4th Cir.1985). Moreover, the harm must be caused by prison officials' "deliberate indifference" to prison conditions or serious medical needs. *See Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Ruefly v. Landon*, 825 F.2d 792 (4th Cir. 1987) (section 1983 claim asserted against prison officials by an inmate assaulted by a fellow inmate). Prison officials' negligence is not sufficient to allow recovery. *Id.*

■ Although convicted prisoners do not forfeit all of their constitutional protection, *see Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), judicial restraint is often an appropriate response to prisoners' Eighth Amendment claims. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir.1990). The Supreme Court has repeatedly emphasized that courts should not "substitute [their] judgment ... on difficult and sensitive matters of institutional administration ... for the determinations of those charged with the formidable task of running a prison." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S.Ct. 2400, 2407, 96 L.Ed.2d 282 (1987).

■ Defendants have described the procedures that are in place for admitting all prisoners and for handling prisoners with AIDS. From that description, it is appar-

**2.** On September 24, 1990, plaintiff Portee also filed a motion for summary judgment, to which defendants filed a memorandum in opposition on October 5, 1990.

ent that all inmates entering the South Carolina Department of Corrections are given a medical examination, including a history, physical examination, and appropriate medical tests. Those tests include a blood test for the HIV virus when medically indicated. Dr. Tollison lists the factors that indicate that an inmate may be at risk of carrying the virus as "homosexual history, I.V. drug user, positive tuberculosis test, and inmates who have had recent blood transfusions." Affidavit of Tollison, para. 4.

South Carolina Department of Corrections Policy No. 2100.3-5-1, developed with the assistance of Dr. Tollison, addresses the problems presented by prisoners with AIDS. As Dr. Tollison states in his affidavit, the state of the medical art indicates that AIDS is not spread by casual contact; therefore, the policy does not require the segregation of prisoners with AIDS from the general prison population. Dr. Tollison further states that all inmates are informed of the types of high-risk behavior responsible for the spread of the disease, as well as the fact that such behavior is prohibited by prison regulations. Affidavit of Tollison, para. 3.

This court recognizes that the Eighth Amendment may be implicated by the exposure of inmates to communicable diseases, see *Lareau v. Manson*, 651 F.2d 96 (2nd Cir.1981); *Smith v. Sullivan*, 553 F.2d 373 (5th Cir.1977); however, this is not a case presenting the necessary facts to implicate the Eighth Amendment. Prison rules prohibit the types of behavior that result in the transmission of the HIV virus, including sexual activity and the use of intravenous drugs.[3] Those prisoners who follow the rules are not in significant danger of contracting the disease; therefore, prison officials' policy decisions not to segregate the HIV-carriers and not to test every incoming prisoner for the virus cannot be said to constitute deliberate indifference. The practices and regulations governing the admission of prisoners as well as the handling of prisoners with AIDS are sound in light of the medical consensus on the spread of the disease. Such decisions are precisely the kind that are best left to the prison officials. *O'Lone*, 482 U.S. at 353, 107 S.Ct. at 2406.

Several courts have considered claims similar to the ones presented in this action, and all have concluded under the circumstances presented that the Eighth Amendment was not implicated. In *Glick v. Henderson*, 855 F.2d 536 (8th Cir.1988), the court rejected a prisoner's request to require prison officials to test the general prison population for AIDS and to segregate the HIV carriers:

We agree with [plaintiff] that he could have a colorable claim under § 1983 if he could show that there is "a pervasive risk of harm to inmates" of contracting the AIDS virus and if there is "a failure of prison officials to reasonably respond to that risk." ... However, we disagree

---

**3.** In 1988, the United States government mailed to every household a report on AIDS, including a full explanation of the means by which the virus is transmitted. The report stated as follows:

[T]he AIDS virus is hard to get and easily avoided. You won't just "catch" AIDS like a cold or flu because the virus is a different type. The AIDS virus is transmitted through sexual intercourse, the sharing of drug needles, or to babies of infected mothers before or during birth. You won't get the AIDS virus through everyday contact with the people around you in school, in the workplace, at parties, child care centers, or stores. You won't get it by swimming in a pool, even if someone in the pool is infected with the AIDS virus.... You won't get AIDS from a mosquito bite. The AIDS virus is not transmitted

through a mosquito's salivary glands like other disease[s] such as malaria or yellow fever. You won't get it from bed bugs, lice, flies, or other insects, either. You won't get AIDS from saliva, sweat, tears, urine, or a bowel movement. You won't get AIDS from a kiss. You won't get AIDS from clothes, a telephone or from a toilet seat. It can't be passed by using a glass or eating utensils that someone else has used. You won't get the virus by being on a bus, train, or crowded elevator with a person who is infected with the virus, or who has AIDS.

United States Department of Health and Human Services, Pub. No. (CDC) HHS-88-8404, "Understanding AIDS," p. 2 (1988) (quoted in *Glick v. Henderson*, 855 F.2d 536, 539 n. 1 (8th Cir.1988). The medical community's consensus on the spread of AIDS has not changed since this report was drafted. *See* Affidavit of Tollison.

that this claim presents such a situation. As already noted the risks being alleged by [plaintiff] are unsubstantiated fears unrecognized by the mainstream medical community. Accordingly, we are unwilling to term as unreasonable the prison officials' decision not to institute a wholesale AIDS testing and segregation program in response to these specific fears.

*Id.* at 539–40 (citations omitted). *See also Deutsch v. Federal Bureau of Prisons*, 737 F.Supp. 261 (S.D.N.Y.1990) (plaintiff "has not presented ... any facts or allegations from which it might be inferred that the decision to house the cellmate with [plaintiff] without informing him of the HIV test results evidenced a deliberate indifference to his medical needs"); *Feigley v. Fulcomer*, 720 F.Supp. 475 (M.D.Pa. 1989) (prison officials did not violate Eighth Amendment right to be free from cruel and unusual punishment by failing to routinely test for HIV virus, or by failing to segregate carriers of the virus); *Davis v. Stanley*, 740 F.Supp. 815 (N.D.Ala.1987) (court rejecting Eighth Amendment claim against a county sheriff who placed prisoner in cell with HIV-infected cellmate, finding that sheriff did not act with deliberate indifference to well-being of prisoner).

In light of the state of the medical art as expressed in the affidavit of Dr. Tollison, this court is able to rule as a matter of law that plaintiffs are not entitled to monetary or injunctive relief under 42 U.S.C. § 1983. South Carolina Department of Corrections practices and policies governing the admission of prisoners and the handling of prisoners with AIDS do not violate the Eighth Amendment's prohibition against cruel and unusual punishment.[4]

Based upon the foregoing reasoning and cited authorities, defendants' motion for summary judgment is hereby granted.[5] Rule 56, Fed.R.Civ.Proc.

IT IS SO ORDERED.

---

**4.** Defendants offered several other grounds to support their motion for summary judgment on plaintiffs' claim for damages. Because it is prison policy that these plaintiffs are complaining of rather than any maverick actions of these two persons, this suit is properly viewed as one against these defendants in their official capacities. Because they are state officials, however, any claim for damages is barred by Eleventh Amendment immunity as well as the Supreme Court's holding in *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that states and state officials are not "persons" as that term is used in 42 U.S.C. § 1983.

In addition, to the extent that these allegations can be read as directed against these defendants in their individual capacities, the affirmative defense of qualified immunity would apply. To overcome this defense, plaintiffs must show that the defendants' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This court has concluded that no such violation has taken place; however, even assuming there was a violation, the specific rights in this particular context were not clearly established; therefore, qualified immunity would shield these individuals from liability. *See also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

**5.** Plaintiff Portee's motion for summary judgment and his "Motion for Internal Investigation" are hereby denied.