IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MEIERGERD V. QATALYST CORP.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID MEIERGERD, APPELLANT,

V.

QATALYST CORPORATION AND ROLAND PINTO, APPELLEES.

Filed November 28, 2023.    No. A-22-939.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Adam J. Kost, of Remboldt Ludtke, L.L.P., for appellant.

Christopher S. Bartling, of Bartling & Hinkle, P.C., for appellees.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

David Meiergerd appeals from an order of the Lancaster County District Court sustaining Qatalyst Corporation's and Roland Pinto's motion for satisfaction and discharge of a revived May 2008 default judgment on one count, with the judgment amount on three other counts still outstanding. Meiergerd challenges the district court's interpretation of the amount due on the judgments, specifically as it relates to postjudgment interest. We affirm.

## BACKGROUND

In November 2007, Meiergerd (an alleged Qatalyst shareholder), filed a complaint against Qatalyst and Pinto (the alleged president of Qatalyst) regarding money he loaned them. As relevant to this appeal, counts III through V of Meiergerd's complaint alleged claims of default on three promissory notes and count VI alleged a claim of "Unpaid Promises to Pay" other monies loaned. Specifically, as to count III, Meiergerd sought judgment in the amount of $55,000, plus "interest

- 1 -

at the highest rate permitted by Nebraska law from December 22, 2006," which was the date that promissory note was due. As to count IV, Meiergerd sought judgment in the amount of $33,000, plus "interest at the highest rate permitted by Nebraska law from January 11, 2007," which was the date that promissory note was due. As to count V, Meiergerd sought judgment in the amount of $22,000, plus "interest at the highest rate permitted by Nebraska law from January 21, 2007," which was the date that promissory note was due. As to count VI, Meiergerd sought judgment in the amount of $132,671.20, plus "interest at the highest rate permitted by Nebraska law from the respective dates" on which various loans were made based on Qatalyst's and Pinto's oral promises to pay. In the complaint, Meiergerd also sought "interest as provided by law from the date of judgment until paid," attorney fees, and costs.

In April 2008, Meiergerd filed a motion for default judgment, alleging that Qatalyst and Pinto, despite being served, failed to file an answer to his complaint. As relevant to this appeal, for count III, Meiergerd sought judgment in the amount of $66,953.33 ($55,000 as of December 22, 2006, and interest of $11,983.33 from December 22; he specified the rate of interest from December 22 as $24.4444 per day). For count IV, Meiergerd sought judgment in the amount of $39,893.33 ($33,000 as of January 11, 2007, and interest of $6,893.33 from January 11; he specified the rate of interest from January 11 as $14.6667 per day). For count V, Meiergerd sought judgment in the amount of $26,497.78 ($22,000 as of January 21, 2007, and interest of $4,497.78 from January 21; he specified the rate of interest from January 21 as $9.778 per day). For count VI, Meiergerd sought judgment in the amount of $163,547.12 ($132,671.69 in loans plus interest of $30,875.43; our calculation of the interest is $58.97 per day). In his motion, Meiergerd noted that Nebraska statutes provided for a maximum rate of interest of "16 percent per annum." (We note that the "per day" rates of calculated interest above correspond to 16 percent per annum). For all counts, Meiergerd sought "interest thereon from the time of judgment at the highest legal rate."

In May 2008, the district court granted Meiergerd's motion for default judgment. As relevant to this appeal, the court ordered:

> . . . .
>
> 3. That [Meiergerd] have and recover from the Defendants under Counts III, IV, and V of the Complaint the collection of three notes issued by Defendant Qatalyst to the Plaintiff Meiergerd plus interest in the amount of $133,344.44 plus post judgment interest thereon from the date of Judgment at 16% compounded annually ($48.89 per day) until the satisfaction of the Judgment and Court costs;
>
> 4. That [Meiergerd] have and recover from the Defendants under Count VI the collection of a series of loans made by [Meiergerd] to the Defendants Qatalyst and Pinto in the amount of $163,547.12, post-judgment interest from the date the Court enters judgment until satisfaction of judgment at the rate of 16% compounded annually ($58.97 per day) and court costs.
>
> 5. Attorney's fees in the Amount of $3,462.02 . . . .
>
> . . . .
>
> 7. The Defendants are ordered to pay the costs of this action.

In August 2019, Meiergerd filed a "Verified Motion to Revive Dormant Judgment and Affidavit," seeking an order from the district court reviving the dormant judgment entered in May 2008. The court subsequently entered an order of revivor.

On September 8, 2022, Qatalyst and Pinto filed a "Motion for Order to Determine Balance of Judgments and Notice of Hearing," asking the district court for an order stating the current amounts due on the judgments as of the time of the hearing. On September 13, Meiergerd filed an objection to the motion "on the basis that [the district court] lacks subject matter jurisdiction to alter, interpret, or clarify" the May 2008 order. Following a hearing on the matter, the court entered an order on September 20 overruling the motion because it lacked subject matter jurisdiction to decide the motion.

On September 28, 2022, Qatalyst and Pinto filed a "Motion for Satisfaction and Discharge of Judgments and Notice of Hearing," asking the district court for an order (1) finding that judgment against Qatalyst and Pinto in the original amount of $163,547, along with interest and court costs, and the judgment for attorney fees in the amount of $3,462.02, had been fully paid and satisfied, and (2) discharging said judgments. "In support of the Motion," Qatalyst and Pinto "show the Court that on September 21, 2022, checks were tendered to the Clerk of the District Court for Lancaster County, Nebraska, for payment of the judgments, and the Justice Party Balance Due report shows a zero balance owing on said judgments." Qatalyst and Pinto alleged they requested a satisfaction of judgment from Meiergerd, but he refused.

A hearing was held on November 21, 2022. Received as evidence at the hearing were copies of three checks paid to the district court by Qatalyst, Pinto, and/or their attorney. The checks were in the amounts of $471,665.37, $3,462.02, and $1,755.45. Also received in evidence were copies of the "Party Balance Due" from JUSTICE in this case, which show that a judgment in the amount of $163,547.12 was paid by way of amounts from two of the checks ($1,592.19 came from the check in the amount of $1,755.45, and the remainder of that check was applied to various fees; $161,954.93 came from the check in the amount of $471,665.37, and the remaining $309,710.44 was accrued interest). The JUSTICE printout showed no remaining balance owed on the $163,547.12 judgment. The check for $3,462.02 satisfied the judgment for attorney fees, and the JUSTICE printout showed no remaining balance owed.

The district court entered an "Order and Satisfaction of Judgments (On Count VI & Attorney Fees)" on December 5, 2022. The court noted that the parties disagreed about the amounts due and owing under certain judgments entered in May 2008 against Qatalyst and Pinto. It said:

> The Court now being fully advised in the premises, finds that the evidence shows that the amount due on the judgment against Qatalyst Corporation and Roland Pinto on Count VI for $163,547.12 was paid by a check in the amount of $471,666.37 [sic] (judgment $161,954.93, plus interest of $309.710.44 [sic]); that amounts due and owing on the judgment for attorney fees of $3,462.02 were paid by a check from Defendants and/or their counsel to the Lancaster County District Court [on September 21, 2022]; and that the judgment on Counts III, IV & V for $133.344.44 [sic] (plus interest of $260,437.03 as of today's date) against Qatalyst Corporation remains outstanding. Therefore, the judgment against Qatalyst Corporation and Roland Pinto on Court VI and the judgment for attorney fees have been fully satisfied.

The court therefore ordered that Qatalyst's and Pinto's "Motion for Satisfaction and Discharge of Judgments" was sustained, and the judgment on Count VI against Qatalyst and Pinto and the judgment for attorney fees was satisfied and discharged. The judgment on Counts III, IV, and V against Qatalyst Corporation remained outstanding.

Meiergerd appeals.

## ASSIGNMENT OF ERROR

Meiergerd assigns that the district court erred in sustaining Qatalyst's and Pinto's motion for satisfaction and discharge of judgments because it erred in interpreting the amount due on the judgments.

## STANDARD OF REVIEW

The meaning of the judgment is a question of law. *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022).

When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Id.*

## ANALYSIS

At issue in this appeal is the meaning of the district court's May 2008 order, particularly regarding postjudgment interest. The order states, in relevant part:

> 3. That [Meiergerd] have and recover from the Defendants under Counts III, IV, and V of the Complaint the collection of three notes issued by Defendant Qatalyst to the Plaintiff Meiergerd plus interest in the amount of $133,344.44 plus **post judgment interest thereon from the date of Judgment at 16% compounded annually ($48.89 per day) until the satisfaction of the Judgment and Court costs**;

> 4. That [Meiergerd] have and recover from the Defendants under Count VI the collection of a series of loans made by [Meiergerd] to the Defendants Qatalyst and Pinto in the amount of $163,547.12, **post-judgment interest from the date the Court enters judgment until satisfaction of judgment at the rate of 16% compounded annually ($58.97 per day) and court costs**.

(Emphasis supplied.)

In its December 5, 2022, "Order and Satisfaction of Judgments (On Count VI & Attorney Fees)," the district court implicitly utilized the per diem interest rate to determine that the judgment on count VI had been satisfied, and to determine the amount that remained outstanding for counts III, IV, and V.

Meiergerd argues that the exclusive application of the per diem interest rates was improper because "by applying only a per diem interest rate, the District Court completely disregarded the language of the [May 2008] Order which states interest is to be applied 'at the rate of 16% compounded annually.'" Brief for appellant at 12. He contends,

> The only way to give effect to every word within the 2008 Order, without disregarding the words therein (as was done by the District Court in this case), is to apply the per diem rate

- 4 -

for the first year after the judgment was entered and thereafter calculate interest at a rate of 16% compounded annually.

*Id.* at 12 (emphasis in original). Meiergerd notes that "unlike simple interest, compounding interest results in a different amount of interest accruing each year" because "[a]fter each period of one year, the unpaid interest gets added to the principal and then the applicable interest rate is applied to the newly calculated principal." *Id.* at 12-13. He includes an illustration table in his brief to show that using 16 percent interest, compounded annually, for the judgment in Count VI, $1,357,037.85 was due and owing to him for the principal and interest as of September 21, 2022.

Qatalyst and Pinto contend that the May 2008 Order was "entirely unclear" and "[Meiergerd's] interpretation would require additional language [i.e., $58.97 per day "***for the first year***," or similar language] that is not in the four corners of the Order, and does not exist." Brief for appellee at 10 (emphasis in original). They also note that compound interest generally is not allowable on a judgment in Nebraska. Qatalyst and Pinto argue, "A reasonable interpretation of the default judgment is the Court intended simple interest, and the word compounded was included as a mistake, or the Court believed the word would be treated the similar [sic] to the word 'calculated.'" *Id.* at 12. Thus, they argue that the district court properly calculated the judgments in this matter in its December 2022 "Order and Satisfaction of Judgments (On Count VI & Attorney Fees)."

After the time for appeal from a judgment has passed, a trial court's postjudgment interpretation of the judgment is irrelevant to an appellate court's determination of the judgment's meaning, which, as a matter of law, is determined by the contents of the judgment in question. *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990). See, also, *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986) (what decree, as it became final, means as matter of law as determined from four corners of decree is what is relevant). Even when our determination involves "interpretation" of the judgment or decree, its meaning is determined, as a matter of law, by its contents. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Unlike disputes over the meaning of an ambiguous contract, the parties' subjective interpretations and intentions are wholly irrelevant to a court's declaration, as a matter of law, as to the meaning of an ambiguous decree. *Id.* The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation. *Id.* Effect must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed. *Id.*

In our review of the May 2008 default judgment, we note that the words "compounded annually" are subject to two conflicting interpretations. As relevant to this case, "compound" can be defined as "1. To put together, combine, or construct" or "2. To compute (interest) on the principal and the accrued interest." Black's Law Dictionary 346 (10th ed. 2014). The arguments of Qatalyst and Pinto find support under the first definition, while the second definition supports Meiergerd's position. However, Meiergerd's argument would require us to ignore the specified "per day" rates in the parentheses that follow the words "compounded annually." And the "per day" rates correlate to a simple 16 percent annual interest rate, which we cannot ignore. See "Parenthesis," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/parenthesis

(last visited Oct. 5 2023) (defining "parenthesis" as: 1a "an amplifying . . . or explanatory word, phrase, or sentence inserted in a passage from which it is usually set off by punctuation," 1b "a remark or passage that departs from the theme of a discourse: DIGRESSION"; 2 "INTERLUDE, INTERVAL"; 3 "one or both of the curved marks ( ) used in writing and printing to enclose a parenthetical expression or to group a symbolic unit in a logical or mathematical expression"). We find the "per day" rate in the default order was an explanation of the annual interest rate, and the only way to harmoniously construe the district court's specific "per day" rate with the preceding words "compounded annually" is to look to the first definition of "compound," specifically "to put together, combine, or construct" annually; in other words, calculated annually. This is a fair and reasonable interpretation of the order and is the only interpretation that gives effect to every word and part and brings all parts into harmony. See *Weaver v. Weaver, supra*.

As an aside, we note that the daily rates, which correspond to a simple interest rate of 16 percent annually, are what Meiergerd himself utilized in his motion for default judgment. While that fact is not dispositive of our determination of the meaning of the May 2008 order, it is further indication that interest "compounded annually ($58.97 per day)" meant interest calculated annually rather than annually compounding interest.

CONCLUSION

For the reasons stated above, we affirm the district court's order entered on December 5, 2022.

AFFIRMED.